UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MUSTANG TOWERS COUNCIL OF CO-OWNERS, INC., *Plaintiff* | § § § § | |
| V. | § § | Civil Action No. 2:18-cv-00355 |
| | § | JURY |
| UNITED NATIONAL INSURANCE COMPANY, *Defendant*. | § § § § | |

## DEFENDANT'S MOTION TO COMPEL APPRAISAL PROCESS AND MOTION TO ABATE

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW, UNITED NATIONAL INSURANCE COMPANY**, Defendant in the above-styled and numbered cause, and files this its Motion to Compel Appraisal Process and Motion to Abate, and in support of said Motions would respectfully show the Court as follows:

### I.
### CASE FACTS

1. This lawsuit is a first party breach of contract, common law bad-faith, and violations of the Texas Insurance Code and DTPA case wherein Plaintiff Mustang Towers ("Plaintiff") alleges United National Insurance Company ("Defendant") improperly investigated, handled and underpaid an insurance claim for storm damage to Plaintiff's building located at 6109 Highway 361, Port Aransas, Nueces County, Texas 78373 as a result of Hurricane Harvey.

2. Plaintiff's property was insured by multiple insurance policies. First, Plaintiff's property was insured by the Texas Windstorm Insurance Association ("TWIA") under insurance policy 65884208 ("TWIA Policy"). The limit of liability for the fifteen-story main condo building ("Building 1") under the TWIA Policy was $4,397,000. Plaintiff's property was also insured by

1

Defendant under insurance policy MP0677815 ("UNIC Policy"). *See Exhibit A, Certified Copy of the Policy*. The UNIC Policy has a wind and hail exclusion for all buildings and/or structures on the property other than Building 1. Defendant insured Building 1 for $11,021,535 with a $4,397,000 wind/hail deductible. There is an "other insurance" provision in the UNIC Policy that makes the UNIC Policy excess to the TWIA Policy. *See Exhibit A at CP 00 90 07 88*.

3. Plaintiff reported the underlying claim to Defendant on or about September 1, 2017. The claim (Claim #17004145) arose out of loss of business income due to alleged damage to Plaintiff's property from wind during Hurricane Harvey on or about August 25, 2017. When Plaintiff reported the claim to Defendant, the claim consisted of a business income claim and "[e]xcess wind maybe." *See Exhibit B, Property Loss Notice*.

4. One of Defendant's claims examiners, Eric Kehs, called the insured on September 4, 2017 and left a message for Chuck Crawford (contact for the insured with the insured's management company, CCMS). Mr. Crawford returned Mr. Kehs' phone call on September 5, 2017, and he told Mr. Kehs that the insured had little information on damages; rather, he suggested that Mr. Kehs call Wayne Walker with the Texas Windstorm Insurance Association ("TWIA"). Mr. Kehs immediately reached out to Mr. Walker with TWIA, making contact with him on September 5, 2017. Mr. Walker told Mr. Kehs that he did not believe the wind damage to Building 1 exceeded the $4.397 million deductible under the UNIC Policy. Mr. Walker said TWIA had not yet inspected, but that he would update Defendant once he had more information. *See Exhibit C, Claim File Diary Entry*.

5. Defendant also retained an independent adjuster, Robert Soefje from Brush Country Claims, Ltd., to follow and monitor the wind damage claim and to assist in retrieving business income items needed in accordance with the endorsement language pertaining to a loss

of business income claim. In addition to the adjusters for TWIA, Plaintiff's own account representative and Soefje's contact person, Brenda Bensley, told Soefje that the damages would not reach Defendant's $4.397 million deductible. Specifically, Ms. Bensley told Soefje that wind/water damages were approximately $750,000. *See Exhibit D, Email from Robert Soefje to Kate Wilkinson*. Defendant relied upon those statements, the fact that Plaintiff only indicated that there *might* be a wind damage claim on the Loss Notice form submitted by Plaintiff, and multiple initial estimates from both TWIA's engineers and independent adjusters that reflected damages well below Plaintiff's deductible.

6. The first TWIA estimate, dated October 12, 2017, amounted to $1,714,712.02 in damages to Building 1, which is the only building with windstorm coverage under UNIC's Policy. *See Exhibit E, Summary for 1A: Main Building*. This amount is approximately $2,682,288.00 under Plaintiff's deductible.

7. On December 13, 2017, Attorney Fred Dreiling, on behalf of Mustang Towers, provided what he labeled "a comprehensive estimate of the damages to Mustang Towers caused by the hurricane." *See Exhibit F, Email Correspondence from Fred Dreiling, UNIC0079-UNIC0080*. The estimate was prepared by the public adjusting firm, Quinney Holdings, LLC, d/b/a Loss Solutions. That estimate prepared by Plaintiff's own public adjuster amounted to $4,589,978.43. However, Soefje reviewed the estimate and upon careful review it was determined that the estimate still did not reach the $4,397,000 deductible on the UNIC Policy because it included damages to portions of the property not covered by the UNIC Policy, as well as duplicate and excessive line items for estimated damages.

8. Soefje spoke with Brian Ingles at TWIA on December 15, 2017, and Ingles informed Soefje that in the end TWIA's damage estimate would be around $2,000,000. TWIA

then revised its October 2017 estimate on December 22, 2017. That estimate amounted to approximately $2.3 million and included all of Plaintiff's Property, not just Building 1. This was still more than $2 million below Defendant's layer of coverage and included portions of Plaintiff's Property that were not covered under the UNIC Policy.

9. Thereafter, despite Defendant being in contact with Plaintiff for purposes of continuing its adjustment of the business income claim, Defendant was never made aware by Plaintiff's public adjuster, Plaintiff, Plaintiff's counsel, or anyone from TWIA that the estimated damages to Building 1 would exceed $4,397,000. During Soefje's interactions with Plaintiff's authorized representatives regarding Plaintiff's business income claim, Plaintiff never indicated to Defendant that it believed the property damages to Building 1 were higher than Plaintiff's deductible.

10. For the period between January and June 2018, no one from TWIA or any of Plaintiff's public adjusters, counsel or representatives contacted Soefje with respect to any dispute with TWIA's estimate and/or that damages to the building exceeded Plaintiff's deductible.

11. Soefje attempted to follow up on the status of Plaintiff's wind damage claim with TWIA in mid-May 2018, sending an email to Ms. Bensley, his contact with Plaintiff. Soefje did not receive a response. *See Exhibit G, May 14th Email from Soefje to Brenda Bensley*. On June 4, 2018, Soefje sent another email to Ms. Bensley. *See Exhibit H, June 4th Email from Soefje to Brenda Bensley*. On June 8, 2018, Fred Samudio replied, stating that Plaintiff believed its property damage "significantly exceeded" Plaintiff's deductible. *See Exhibit I, June 8th Email from Fred Samudio to Soefje*. However, Plaintiff provided no support for its contention that the damages to Building 1 exceeded the $4.397 million deductible.

12. On July 3, 2018, Defendant became aware for the first time that Plaintiff was claiming damages in excess of $8,000,000 to Building 1 alone. This was learned when Plaintiff's counsel sent a notice of claim letter to Defendant claiming that Defendant underpaid the claims and/or engaged in unfair and deceptive insurance claim practices under the Texas Insurance Code. *See Exhibit J, Notice of Claim Letter*. At this point, Defendant immediately sought to have its independent adjuster, Soefje, a building consultant with Connell Contracting, Inc., and a retained engineer, Eric Moody, P.E., Ph.D., inspect the Property and prepare their respective reports and damage estimates.

13. On August 17, 2018, Plaintiff filed its Original Petition in state court in Nueces County. Plaintiff served Defendant with the Petition on October 1, 2018. Defendant timely removed the case to federal court on October 22, 2018. Plaintiff provided a new estimate prepared by a previously unknown consultant for alleged interior damages only on October 1, 2018. The estimate was prepared by Art Boutin and amounted to $3,619,731.96. This was the first time Mr. Boutin had ever prepared an estimate regarding claimed interior damages at Mustang Towers. Since sending the July 3rd demand letter, Plaintiff has also provided Defendant's counsel various invoices and estimates from contractors (some of whom Plaintiff has not used or will not use) in addition to Mr. Boutin's brand new estimate which was received in October.

14. Soefje also prepared an estimate on Defendant's behalf and the estimate was provided to Plaintiff on October 22, 2018, along with the engineer's report and the building consultant's report from Connell Contracting. Defendant's estimate addresses all of Building 1 (interior and exterior) and amounts to approximately $4.2 million, which is below Plaintiff's deductible. The engineer's report found that some of the claimed building damage was not hurricane related, but rather caused by other issues with the building that would not be covered by

the UNIC Policy. Even if Defendant gave Plaintiff the benefit of the doubt and assumed that all amounts contained within Plaintiff's invoices are for actual covered damages caused by the hurricane (which Defendant is not stipulating to), Soefje's estimate is still below Plaintiff's deductible.

15. Because it was apparent that the parties were millions of dollars apart with respect to the amount of covered loss for Building 1, Defendant invoked appraisal pursuant to the policy provision and designated its chosen appraiser on November 26, 2018. *See Exhibit K, November 26, 2018 Letter Invoking Appraisal*. Plaintiff has not designated an appraiser and has taken the position that Defendant waived its right to appraisal. *See Exhibit L, November 26, 2018 Email Response to Defendant's Letter*. Defendant disagrees that it has waived its right to invoke appraisal.

## II.
## MOTION TO COMPEL THE APPRAISAL PROCESS

16. Both federal courts applying Texas law and Texas state courts have consistently recognized the appraisal process as an efficient means to resolve insurance claim disputes without litigation. Texas law is quite clear that "[a]ppraisal clauses, commonly found in homeowners, automobile, and property policies in Texas, provide a means to resolve disputes about the amount of loss for a covered claim. These clauses are generally enforceable, absent illegality or waiver. Appraisals can provide a less expensive, more efficient alternative to litigation, and we recently held that they generally go forward without preemptive intervention by the courts." *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 406-407 (Tex. 2011). Federal courts applying Texas law routinely favor the appraisal process for the reasons stated by the Texas Supreme Court in *In re Universal Underwriters*. *See Adami v. Safeco Ins. Co. of Indiana*, No. 4:17-CV-574, 2018 WL 501093, *2 (E.D. Tex. Jan. 22, 2018); *Dean v. State Farm Lloyds*, No. 5:16-CV-1321-DAE,

2017 WL 5197872, at *4 (W.D. Tex. June 13, 2017); *Sanchez v. Prop. and Cas. Ins. Co. of Hartford*, No. H-09-1736, 2010 WL 413687, at *4 (S.D. Tex. Jan. 27, 2010). Even when the underlying claim was denied by the insurance company, an appraisal provision is still valid and enforceable. *Pounds v. Liberty Lloyds of Texas Ins. Co.*, 528 S.W.3d 222, 226 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *In re State Farm Lloyds*, 514 S.W.3d 789, 793 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

17. In this case, the policy at issue contains an appraisal clause on the Condominium Association Coverage Form (CP 00 17 06 95). *See Exhibit A*. Texas law mandates that such clauses be enforced by the courts in accordance with Texas' public policy to encourage the resolution of insurance claim disputes without the need for litigation. *In re Universal Underwriters,* 345 S.W.3d at 406-07; *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 891-93 (Tex. 2009) (holding insurer is bound by appraisal clause in order to have the amount of loss determined, even when dispute also involves questions of causation); *see also In re Certain Underwriters at Lloyds*, No. 10–11–00263–CV, 2011 WL 4837869 (Tex. App.—Waco Oct. 12, 2011, orig. proceeding); *In re Slavonic Mut. Fire Ins. Assoc.*, 308 S.W.3d 556, 661-62 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding). Thus, the appraisal clause at issue here is clearly enforceable.

### A. **Defendant has not waived its right to enforce the appraisal provision under the facts of this case.**

18. It is also clear that Defendant has not waived its entitlement to enforce the appraisal clause and to compel Plaintiff to participate in the appraisal process. Federal courts applying Texas law consistently recognize the Texas Supreme Court's analysis and holding in the seminal case *In re Universal Underwriters* regarding waiver of the appraisal process. "Waiver requires intent, either the intentional relinquishment of a known right or intentional conduct inconsistent with

claiming that right." *Dike v. Valley Forge Ins. Co.*, 797 F.Supp.2d 777, 785 (S.D. Tex. 2011) (quoting *In Universal Underwriters*, 345 S.W.3d at 407) (internal quotations omitted); *Adami v. Safeco Ins. Co. of Indiana*, No. 4:17-CV-574, 2018 WL 501093, *4 (E.D. Tex. Jan. 22, 2018). For purposes of establishing waiver, the conduct being relied upon must be "reasonably calculated to induce the assured to believe that a compliance by him with the terms and requirements of the policy is not desired, or would be of no effect if performed. The acts relied on must amount to a denial of liability, or a refusal to pay the loss." *Dike*, 797 F.Supp.2d at 783 (quoting *Scottish Union & Nat. Ins. Co. v. Clancy*, 8 S.W. 630, 632 (Tex. 1888)).

19. Here, Defendant did not induce Plaintiff to believe that Plaintiff's compliance with the Policy's terms was not desired. Defendant has neither denied liability nor refused to pay the loss. Indeed, Defendant has actively worked with Plaintiff to properly adjust the loss of business income claim since the day that claim was made with Defendant. Multiple payments have been made to Plaintiff for the loss of business income claim. This alone suffices to show that Defendant desires for both Plaintiff and Defendant to comply with the Policy requirements.

20. Additionally, Defendant has also monitored the property damage claim handled by TWIA. Therefore, Defendant has not acted in a manner that amounts to a denial of liability; rather, it has acted appropriately given the particular circumstances surrounding this claim. Similarly, Defendant has neither outrightly nor implicitly refused to pay the property portion of the loss. Again, Defendant learned for the first time that Plaintiff was claiming the damages to Building 1 exceeded its deductible of $4,397,000 in June of 2018.

21. Further, "while an unreasonable delay is a factor in finding waiver, reasonableness must be measured from the point of impasse." *In re Universal Underwriters*, 345 S.W.3d at 408 (citing *Sanchez v. Property & Cas., Ins. Co. of Hartford*, No. H-09-1736, 2010 WL 413687, at *5

(S.D. Tex. Jan. 27, 2010) and *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 562 (Tex. App.—Houston [14th Dist.] 2010)). "An impasse is not the same as a disagreement about the amount of loss. Ongoing negotiations, even when the parties disagree, do not trigger a party's obligation to demand appraisal." *In re Universal Underwriters*, 345 S.W.3d at 408. Instead, there must be "a mutual understanding that neither will negotiate further" for an impasse to have occurred. *Id.* at 410.

22. Whether any unreasonable delay in invoking appraisal has occurred following the parties reaching a point of impasse is not based solely on the amount of time that has passed; rather, the measure of time must be reviewed in conjunction with the circumstances of the particular case and the parties' conduct. *Adami*, 2018 WL 501093 at *5; *Dike*, 797 F.Supp.2d at 784; *In re Universal Underwriters*, 345 S.W.3d at 408. Here, Plaintiff and Defendant have not yet reached the point of impasse. An impasse is the point in time when both sides understand that not only is there a dispute as to the amount of loss, but also that it would be futile to make any more attempts to negotiate a settlement. *Rogers v. Nationwide General Ins. Co.*, No. 4:18-CV-00213, 2018 WL 3840940, *3 (E.D. Tex., Aug. 13, 2018). Futility in negotiating a settlement certainly does not exist in this case because both parties have agreed to mediation which is scheduled for January 31, 2019. How can an impasse exist if the parties have agreed to mediate, yet the mediation has not even occurred?

23. In contrast to the instant case, one recent Texas state court case which did uphold a trial court's finding of waiver dealt with an insurer that participated extensively and strategically over the course of months of litigation brought by the insured. *In re Allstate Vehicle and Property Ins. Co.*, 549 S.W.3d 881 (Tex. App.—Fort Worth 2018, no pet. h.). There, waiver was found because before even invoking the appraisal provision, the insurer conducted at least six property

inspections, took the insured's deposition, conducted discovery, agreed to a trial setting in an expedited action, obtained an extension on its expert designation deadline, and sought an Order (which the trial court granted) to conduct a seventh inspection of the roof by a new expert. All of this occurred with respect to a property where the insured claimed the roof damages were in the neighborhood of $20,000. When the insurer sought to compel appraisal, the trial court reiterated the facts listed above and denied the motion to compel appraisal. On appeal, the appellate court affirmed the trial court's ruling, holding that 1) the insurer's conduct by strategically and extensively participating in litigation up to the point that the parties were mere months away from trial constituted waiver by conduct, 2) the insured was prejudiced by the insurer's conduct, and 3) the insurance policy's lack of a non-waiver provision prevented the insurer from overcoming any finding of waiver.

24. Here, Defendant invoked appraisal on November 26, 2018, which was only 35 days after answering and removing the case to this Court. No additional inspections have occurred, no depositions have taken place, and written discovery has not been exchanged. The facts and circumstances in *In re Allstate Vehicle* clearly do not exist here and therefore Defendant has not waived its contractual right to invoke appraisal.

25. Finally, even if it is determined that a party unreasonably delayed invoking a policy's appraisal provision, "[m]ere delay is not enough to find waiver; a party must show that it has been prejudiced." *Dike*, 797 F.Supp.2d at 784 (quoting *In re Universal Underwriters*, 345 S.W.3d at 411). Both Texas state courts and federal courts applying Texas law have made it quite clear that one would be hard-pressed to imagine a scenario where an insured would ever be prejudiced by an insurer's delay in seeking appraisal because the appraisal provision is equally available to both parties to the insurance contract. *Rogers*, 2018 WL 3840940 at *5 (quoting *In re*

*Universal Underwriters*, 345 S.W.3d at 412) ("[I]t is difficult to see how prejudice could ever be shown when the policy. . . gives both sides the same opportunity to demand appraisal. If a party senses that an impasse has been reached, it can avoid prejudice by demanding an appraisal itself. This could short-circuit potential litigation and should be pursued before resorting to the courts.") (internal quotations omitted); *Garcia v. State Farm Lloyds*, No. 4:16-CV-02895, 2017 WL 7051230, at *2 (S.D. Tex. June 20, 2017); *Amarillo Independent School District v. The Travelers Lloyds Ins. Co.*, No. 2:15-CV-155, 2016 WL 9526684, at *3 (N.D. Tex. Nov. 23, 2016).

26. Here, Defendant was not acting inconsistently with claiming any of its rights under the Policy, such as appraisal. Instead, when Defendant first became aware that Plaintiff was claiming the damages exceeded the deductible, Defendant immediately began evaluating Plaintiff's demand and considering how to address the dispute over the amount of loss.

27. Accordingly, under any reasonable analysis, Defendant did not waive the appraisal process. Thus, no waiver of Defendant's right to the appraisal process has occurred here and therefore Defendant moves the Court to compel Plaintiff to engage in the appraisal process pursuant to the UNIC Policy.

B. **There is no waiver because the Policy contains a valid and enforceable non-waiver provision.**

28. Defendant also asserts that no waiver has occurred because the policy in question contains a non-waiver clause. *See Common Policy Conditions form EPB-136 (9/2006) in Exhibit A*. A policy's non-waiver provision is typically valid and enforceable under Texas law. *In re GuideOne Mut. Ins. Co.*, 10-16-00404-CV, 2017 WL 1749793, at *2 (Tex. App.—Waco May 3, 2017, no pet.); *In re GuideOne Nat'l Ins. Co.*, 07-15-00281-CV, 2015 WL 5766496, at *3 (Tex. App.—Amarillo Sept. 29, 2015, no pet.); *Breof BNK Texas, L.P. v. D.H. Hill Advisors, Inc.*, 370 S.W.3d 58, 66 (Tex. App.—Houston [14th Dist.] 2012, no pet.). In addition, a non-waiver clause

in an insurance contract can only be waived if an endorsement is issued by the carrier which is made a part of the policy. There is no such endorsement in Plaintiff's UNIC Policy.

29. In *GuideOne Mut.*, an insurance company and its insured disagreed with respect to payment for alleged property damage to the insured's motel. 2017 WL 1749793, at *1. The insured filed suit against the insurance company and after an unsuccessful mediation, the insurance company invoked appraisal. *Id*. The insured refused to participate in the appraisal process, so the insurance company filed a motion to compel appraisal which the trial court denied. *Id*.

30. On appeal, the insurance company argued that the trial court's failure to enforce the insurance policy's appraisal provision was an abuse of discretion. *Id*. In response, the insured argued that the insurance company waived its right to invoke appraisal. *Id*. In contesting the insured's claim of waiver, the insurance company replied by arguing two points: (1) that the delay in triggering appraisal did not constitute a waiver, and (2) that the policy's non-waiver clause precluded waiver of the appraisal provision. *Id*. The insurance policy had a non-waiver clause stating:

> **12. Waiver or Change of Provisions.**
> This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

*Id.* at *1-2.

31. The *GuideOne* Court did not even address the reasonableness of the delay in triggering the appraisal clause because it determined that the issue of the non-waiver provision was dispositive of the case. *Id.* at *1. The court held that absent any endorsement indicating otherwise, the non-waiver provision should be construed as written and enforced. *Id.* at *3. Because there was no endorsement in the *GuideOne* policy waiving the appraisal provision, the

appraisal clause was held to be valid, enforceable and had not been waived. *Id*. Accordingly, the *GuideOne* Court determined that the trial court abused its discretion by denying the motion to compel appraisal. *Id*.

32. Here, the insurance policy in question has the identical non-waiver clause. *See Common Policy Conditions form IL 00 17 11 98 in Exhibit A*. The non-waiver provision in this case is as follows:

> **B. Changes**
>
> This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

33. Accordingly, for the same reasons stated in the *GuideOne* case, Plaintiff's claim that Defendant waived appraisal is without merit.

## III.
## MOTION TO ABATE

34. Both Texas courts and federal courts applying Texas law have held the entire suit should be stayed pending completion of the appraisal process. *See Adami*, 2018 WL 501093 at *6 (recognizing that "it is in the best interest of justice that the entire case be abated pending appraisal"); *Johnson v. Liberty Mut. Fire Ins. Co.*, 4:14-CV-604, 2015 WL 11170153, at *3 (E.D. Tex. Oct. 30, 2015) (noting that "the majority of Texas courts have held that when a plaintiff asserts extra-contractual claims in addition to a claim for breach of contract, it is in the best interest of justice that the entire case be abated pending appraisal"); *James v. Prop. & Cas. Ins. Co. of Hartford*, No. H-10-1998, 2011 WL 4067880, at *2 (S.D. Tex. Sept. 12, 2011) ("Abatement of the entire case pending appraisal is therefore appropriate and in the interest of the efficient and inexpensive administration of justice."); *Bakhtiari v. Am. Bankers Ins. Co. of Fla.*, No. H-10-3866,

2011 WL 1542830, at *3 (S.D. Tex. Apr. 22, 2011); *Vanguard Underwriters Ins. Co. v. Smith*, 999 S.W.2d 448, 450 (Tex. App.—Amarillo 1999, no pet.).

35. In this case, abatement only makes sense because the outcome of the appraisal, whether it favors plaintiff or defendant, will most likely lead to a complete resolution of this case. Incurring additional expenses associated with litigation does not make sense in the context of an appraisal. It would simply be a waste of time and money.

36. Moreover, if an appraisal award is timely paid by an insurer, Texas law mandates that an insured's breach of contract and extra-contractual claims fail, and summary judgment should be entered in favor of the insurer. *See Mainali Corp. v. Covington Specialty Ins. Co.*, 872 F.3d 255, 258 (5th Cir. 2017); *Quibodeaux v. Nautilus Ins. Co.*, 655 F. App'x. 984, 986–87 (5th Cir. 2016); *Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, 459 F. App'x. 366, 368–69 (5th Cir. 2012); *United Neurology, P.A. v. Hartford Lloyd's Ins. Co.*, 101 F. Supp. 3d 584, 619 (S.D. Tex. 2015), *aff'd*, 624 F. App'x. 225 (5th Cir. 2015); *Pounds v. Liberty Lloyds of Texas Ins. Co.,* 528 S.W.3d 222, 228 (Tex. App.—Houston [14th Dist.] 2017, no pet.)*; Ortiz v. State Farm Lloyds*, 04-17-00252-CV, 2017 WL 5162315, at *1, 3 (Tex. App.—San Antonio Nov. 8, 2017, pet. filed) (mem. op.); *Floyd Circle Partners, LLC v. Republic Lloyds*, 05-16-00224-CV, 2017 WL 3124469, at *6 (Tex. App.—Dallas July 24, 2017, pet. denied) (mem. op.); *Garcia v. Lloyds*, 514 S.W.3d 257, 276, 279 (Tex. App.—San Antonio 2016, pet. denied); *Anderson v. Am. Risk Ins. Co., Inc.*, 01-15-00257-CV, 2016 WL 3438243, at *6 (Tex. App.—Houston [1st Dist.] June 21, 2016, no pet.); *Bernstien v. Safeco Ins. Co. of Ill.*, No. 05–13–01533–CV, 2015 WL 3958282, at *2 (Tex. App.—Dallas June 30, 2015, no pet.) (mem. op.); *In re Slavonic Mut. Fire Ass'n,* 308 S.W.3d 556, 563–64 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Amine v. Liberty Lloyds of Texas Ins. Co.*, 01-06-00396-CV, 2007 WL 2264477, at *4 (Tex. App.—Houston [1st

Dist.] Aug. 9, 2007, no pet.) (mem. op.); *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786–87 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Accordingly, Defendant is entitled to an abatement of this lawsuit until the appraisal process is concluded and respectfully requests this Court to enter the appropriate Order abating this case until such time. Since the parties have already agreed to mediation, Defendant requests the Court to compel appraisal and abate the case if the parties are unable to resolve this dispute in its entirety at mediation.

WHEREFORE, PREMISES CONSIDERED, Defendant **UNITED NATIONAL INSURANCE COMPANY** prays that this Court set a hearing on Defendant **UNITED NATIONAL INSURANCE COMPANY'S** Motion to Compel Appraisal Process and Motion to Abate and after considering said motions, the evidence presented and hearing argument of counsel the Court should grant these Motion to Compel Appraisal Process and Motion to Abate. Defendant requests further relief to which this it may show itself justly entitled, either at law or in equity.

Respectfully submitted,

_/s/ Richard J. Kasson_____
RICHARD J. KASSON
Attorney-in-Charge
State Bar No. 24002392
Southern District of Texas Federal ID No. 21614
rkasson@gcaklaw.com
REBECCA H. ADUDDELL
State Bar No. 24097280
Southern District of Texas Federal ID No. 3050524
raduddell@gcaklaw.com
**GONZALEZ, CHISCANO, ANGULO & KASSON, P.C.**
9601 McAllister Freeway, Suite 401
San Antonio, Texas 78216
Phone: (210) 569-8500
Fax:   (210) 569-8490

**ATTORNEYS FOR DEFENDANT, UNITED NATIONAL INSURANCE COMPANY**

**CERTIFICATE OF CONFERENCE**

Counsel for Movant has conferred with counsel for Plaintiff regarding the subject of these Motions and Counsel cannot agree about the disposition of the motions.

/s/ Richard J. Kasson
RICHARD J. KASSON

**CERTIFICATE OF SERVICE**

I hereby certify that on this the **17th** day of **December 2018**, a true and correct copy of the foregoing instrument was duly served upon all counsel of record via the Court's electronic filing system, facsimile and/or regular mail:

William J. Chriss
Email: wjchrisspc@gmail.com
Kathryn Snapka
Email: ksnapka@snapkalaw.com
**THE SNAPKA LAW FIRM**
606 N. Carancahua St., Suite 1511
Corpus Christi, Texas 78401
Tel:   (361) 884-3330
Fax:   (361) 884-8545

/s/ Richard J. Kasson
RICHARD J. KASSON

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MUSTANG TOWERS COUNCIL OF CO-OWNERS, INC., *Plaintiff* | § § § § | |
| V. | § § | Civil Action No. 2:18-cv-00355 |
| UNITED NATIONAL INSURANCE COMPANY, *Defendant.* | § § § § § | JURY |

## AFFIDAVIT OF REBECCA ADUDDELL

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF BEXAR | § |

BEFORE ME, the undersigned authority, on this day personally appeared REBECCA ADUDDELL, who, being by me duly sworn, deposed as follows:

"My name is REBECCA ADUDDELL. I am over the age of eighteen (18) years, of sound mind, and competent to make this affidavit. I have never been convicted of a felony nor a misdemeanor involving moral turpitude. I am an Associate Attorney at Gonzalez, Chiscano, Angulo & Kasson, P.C., and I have personal knowledge of the facts herein stated and they are true & correct.

Attached to Defendant's Motion to Compel Appraisal and Motion to Abate are eight (8) pages of records from United National Insurance Company which come from portions of its claim file and make up the following Exhibits: B, C, D, E, and F. Additionally, Exhibits G, H, and I to Defendant's Motion to Compel Appraisal and Motion to Abate are five (5) pages of records from Independent Adjuster, Robert Soefje's individual claim file. The records attached to this affidavit are the originals or exact duplicates of the originals."

Further, Affiant sayeth naught.

SIGNED this **17th** day of December, 2018.

_____
REBECCA ADUDDELL

SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this the **17th** day of December, 2018, witness my hand and seal of office.

_____
Notary Public, State of Texas

KRYSTLE MARTINEZ
Notary Public, State of Texas
My Commission Expires
October 22, 2019