UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MUSTANG TOWERS | § | |
| COUNCIL OF CO-OWNERS, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v . | § | CIVIL ACTION NO.  2:18-CV-00355 |
| | § | |
| UNITED NATIONAL INSURANCE | § | |
| COMPANY | § | |
| | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFF'S RESPONSE TO MOTION TO COMPEL APPRAISAL PROCESS AND MOTION TO ABATE

Plaintiff files this response opposing Defendant's Motion to Compel Appraisal Process and Motion to Abate and in support thereof would show the following:

### Background

1.     Defendant now seeks to invoke the "appraisal" process of its policy and abate this suit over 16 months after the date of loss (Hurricane Harvey); over 12 months after determining that it disagree with Plaintiff on the amount of the loss (December 2017-see Defendant's Motion, paragraph 7); over 6 months after statutorily required notice of suit (July 3, 2018-see Exhibit A to Plaintiff's Original Petition); and almost a month after removing the case to this court and filing an answer that did not plead any request for an appraisal (See Defendant's October 22, 2018 Original Answer).  The court should not compel an appraisal and defendant is not entitled to any

abatement of this suit, which would only foment more delay, damage, and prejudice to the Plaintiff.

### Argument and Authorities Concerning the General Law of Appraisal

2.      Although appraisal provisions have been a feature of insurance policies in Texas for well over a century, it has only been in the last fifteen years that these policy provisions have become a common and hotly contested part of insurance coverage and bad faith litigation.[1] Indeed, in its 2009 opinion in *State Farm Lloyds v. Johnson*,[2] the Supreme Court of Texas noted that it had only addressed insurance appraisal provisions a total of five times between 1888 and 2002.[3] The old cases were uniform to the effect that appraisal was a method to establish the value of damaged property—i.e., the "amount" of the loss—under circumstances where coverage was not in dispute; for example, when property is damaged or destroyed and the insurance company and policyholder cannot agree on its value or the amount necessary to replace it.[4]

3.      Appraisal-related litigation has grown substantially since, due in large part to an unfortunate holding from two 2004 Texas Court of Appeals opinion in *Breshears v. State Farm Lloyds*,[5] and *Franco v. Slavonic Mut. Fire Ins. Ass'n.*,[6] that have been followed and expanded upon without reflection to create the carrier coined "*Breshears-Franco* rule."[7] This recent line of

---

1.  *See* State Farm Lloyds v. Johnson, 290 S.W.3d 886, 889 (Tex. 2009) (stating the court has only attended to the matter of appraisal clauses five times between 1892 and 2009).

2.  State Farm Lloyds v. Johnson, 290 S.W.3d 886 (Tex. 2009).

3.  *See* State Farm Lloyds v. Johnson, 290 S.W.3d 886, 889 (Tex. 2009) (highlighting the regular absence of appraisal-related litigation for over a century).

4.  *See* Scottish Union & Nat'l Ins. Co. v. Clancy, 18 S.W. 439, 441 (Tex. 1892) (per curiam) (stating an "agreement to ascertain the amount of the loss . . . has been repeatedly held to be valid as a condition precedent to the right of the plaintiff to sue and recover"); Am. Cent. Ins. Co. v. Bass, 382, 38 S.W. 1119, 1119 (Tex. 1897) ("A policy of insurance may provide that an appraisement shall be made, and that it shall only be conclusive in the event the liability of the insurer is not disputed . .. .").

5.  Breshears v. State Farm Lloyds, 155 S.W.3d 340 (Tex. App.—Corpus Christi 2004, pet. denied) (mem. op.).

6.  Franco v. Slavonic Mut. Fire Ins. Ass'n., 154 S.W.3d 777 (Tex. App.—Houston [14th Dist.], no pet.).

7.  *See, e.g.*, Blum's Furniture Co. v. Certain Underwriters at Lloyds London, 459 F. App'x 366, 368–69 (5th Cir. 2012) (per curiam) (citing the *Breshears* rule).

cases has recently effectively been overruled by the Texas Supreme Court in *USAA v. Menchaca*[8]

because insurers used it as a "get out of jail free card" to squelch litigation after illegally denying and delaying claims, being notified in writing of the policyholders' intent to file suit, being in fact sued over the claims, and then continuing to refuse to pay the claims. As indicated in its Motions, this is precisely what Defendant seeks to use the "appraisal" process to accomplish here: 16 months after the hurricane loss was first reported, 13 months after disagreeing with an estimate of the damage from the insured, and 6 months after written pre-suit notice and demand, all while continuing to refuse to pay the claim at all.

4.    Some intermediate appellate courts have construed the so-called *Breshears-Franco* rule (see Defendant's Motion, pp. 14-15) and the now defunct "independent injury" rule upon which it was based to allow insurers to escape liability for breach of contract, attorneys' fees, statutory and common law "bad faith," and even liability under the Texas Prompt Payment of Claims Act (PPCA), often irrespective of whether the evidence shows an insurer knowingly undervalued or underpaid the claim by a substantial amount when it originally investigated and adjusted the loss, or even if it could be shown that it did so in bad faith.[9] However, conceptually, as a condition of the policy, the provision relates to prerequisites to payment of a covered claim, not to whether the loss or claim is covered or excluded in whole or in part as defined in the "coverage" and "exclusions" portions of the policy. Indeed, the appraisal clause in this case expressly provides that "If there is an appraisal, we will still retain our right to deny the claim."[10]

---

8.  USAA Tex. Lloyds Co. v. Menchaca, 545 S.W.3d 479, 491 (Tex. 2018).

9.  *See, e.g.*, Garcia v. State Farm Lloyds, 514 S.W.3d 257, 277 (Tex. App.—San Antonio 2016, pet. denied) (precluding a bad faith claim as a matter of law).

10.  *See* Amine v. Liberty Lloyds of Tex. Ins. Co., No. 01-06-00396-CV, 2007 WL 2264477, at *5 (Tex. App.— Houston [1st  Dist.] Aug. 9, 2007, no pet.) (mem. op.) ("Appraisal does not resolve coverage issues." (citing Wells v. Am. States Preferred Ins. Co., 919 S.W.2d 679, 683 (Tex. App.—Dallas 1996, writ denied)). See Exhibit A Insurance policy attached to Defendant's motion,  Form CP 00 17 06 95, p. 5 of 9.

5.     Thus, appraisal is an "extra-judicial" contractual device for resolving a specific type of disagreement—the *amount* of a covered loss.[11]   However, appraisal is not a form of "arbitration," even though it has some similarities.[12]   The key difference, which has several important implications for some of the issues addressed below, is that appraisal does not "divest" a Texas court of jurisdiction to decide the legal case, "but only binds the parties to have the extent or amount of the loss determined in a particular way, *leaving the question of liability for such loss to be determined, if necessary, by the courts.*"[13] Thus, in any appraisal, the first question that has to be answered, by a court, is "what is going to be appraised?" The policy speaks in terms of "the amount of loss," without regard to whether or to what extent the loss is covered or not. This interpretation is the same as that enshrined by statute with respect to the judicially created Texas Windstorm Insurance Association and is the same as the interpretation of the Texas Department of Insurance. Sections 2210.574 and 2210.575 of the Texas Insurance Code mandate that with respect to claims against TWIA, who insures the vast majority of windstorm damage along the Texas coast, appraisal is the exclusive method for determining disputes over "the *amount* of loss the association will pay for the *accepted portion of the claim,*" while suit is appropriate when "the association denies coverage for a claim in part or in full and the claimant disputes that determination."[14] More importantly, the Texas Department of Insurance, after Hurricane Harvey made clear that:

---

11.  *See* Amine v. Liberty Lloyds of Tex. Ins. Co., No. 01-06-00396-CV, 2007 WL 2264477, at *3 (Tex. App.—Houston [1st Dist.] Aug. 9, 2007, no pet.) (mem. op.) ("The purpose of an appraisal clause is to provide a binding, extra-judicial 'remedy for any disagreement regarding the amount of the loss.'" (quoting Breshears v. State Farm Lloyds, 155 S.W.3d 340, 344 (Tex. App.—Corpus Christi 2004, pet. denied) (mem. op.)).

12.  *See* State Farm Lloyds v. Johnson, 290 S.W.3d 886, 888 (Tex. 2009) ("In *Scottish Union*, we referred to the scope of appraisal in the course of distinguishing it from arbitration." (citing Scottish Union & Nat'l Ins. Co. v. Clancy, 8 S.W. 630, 631 (Tex. 1888)).

13.  Scottish Union & Nat'l Ins. Co. v. Clancy, 8 S.W. 630, 631 (Tex. 1888) (emphasis added).

14.  Sections 2210.574 and 2210.575, Tex. Ins. Code; Randy Jones v. TWIA, 512 S.W.3d 545, 546 (Tex. App.-·Houston [I st Dist.] 2016, no pet.).

Appraisal only determines the amount of the loss; it **does not affect other causes of action under Insurance Code Chapter 541** (Unfair Methods of Competition and Unfair or Deceptive Acts or Practices) or the Deceptive Trade Practices Act. For example, a policyholder may still bring suit for other issues including:

- causation;
- coverage;
- unfair deceptive acts or practices;
- unfair competition; or
- liability.[15]

6.      Some of the basic requirements for an appraisal issue to arise are self-evident from this stated purpose. The insurer and its policyholder must have (1) a disagreement (2) about the amount of a loss that is (3) apart from disagreement about the question of coverage or liability for such a loss—whatever its amount is ultimately determined to be.[16]  For this reason, courts have recently been required to deal with inappropriately invoked appraisals not resolving the claim or the litigation because one side or the other claimed that "the appraisal did (or did not) include covered damages," and one court of appeals has credited such a claim.[17]  *The appraisal process will not resolve even the breach of contract issues in this case unless both parties agree to let it do so*, and in this sense it is little more than a time consuming, non-binding, attempt to quantify a

---

15.      Texas Department of Insurance, *Special Report: Appraisal in Homeowners Policies*, http://www.tdi.texas.gov/reports/documents/appraisal-in-homeownerspolicies- 04122018.pdf (Apr. 12, 2018) (attached as Ex. C) (emphasis added). While this document still appears as listed on the TDI website if one searches for documents involving "appraisal," the direct link to the document appears to be broken.

16. *Cf.* State Farm Lloyds v. Johnson, 290 S.W.3d 886, 890 (Tex. 2009) ("The policy directs the appraisers to decide the 'amount of loss,' not to construe the policy or decide whether the insurer should pay.").

17. *See* Texas Windstorm Insurance Association v. Dickinson Ind. School Dist., Cause No. 14-16-00474-CV (Tex. App. Houston [14th Dist.], October 4, 2018, no pet.)

5

disputed [and litigated] loss. Indeed, as already stated, the Defendant's own insurance policy says

so. Although the determination of the "amount of the loss" through appraisal prior to litigation,

bad faith, or denial of the claim might help parties resolve that specific issue, only a court can

determine what "loss" means and what "loss" will be quantified in amount. That "loss" would

presumably all damage to a property from an event regardless of whether all or part of that "loss"

is covered.[18]

### Argument and Authority on Waiver and Estoppel

7.      To waive rights under an appraisal clause, a party "must intend to relinquish a

known right or engage in intentional conduct inconsistent with claiming that right," and waiver.

Can be either express or implied by conduct[19] addressing various situations under which an

insurer might waive its right to appraisal by its conduct.[20]      Moreover, an insurer can be estopped

to assert, invoke, or rely upon any condition in a policy, and compliance with any such condition

can be excused. Both estoppel and implied waiver focus on whether the defendant's conduct has

caused prejudice to the insured. As the Texas Supreme Court held last year in *Menchaca*, "if the

insurer's statutory violations prejudice the insured, the insurer may be estopped 'from denying

---

18.  *See* State Farm Lloyds v. Johnson, 290 S.W.3d 886, 889 (Tex. 2009) ("[The appraisal clause] only binds the parties to have the extent or amount of the loss determined in a particular way, leaving the question of liability for such loss to be determined, if necessary, by the court." (quoting Scottish Union & Nat'l Ins. Co. v. Clancy, 8 S.W. 630, 631 (Tex. 1888))).
19

19.  *In re* State Farm Lloyds, 514 S.W.3d 789, 794 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding) (citing *In re* Universal Underwritiers of Texas Ins. Co., 345 S.W.3d 404, 407 (Tex. 2011) (orig. proceeding)).

20.  *See In re* State Farm Lloyds, 514 S.W.3d 789, 794 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding) ("Instead, in deciding whether an insurer waived its right to invoke an appraisal clause, we also must consider the policy's language and the surrounding circumstances to determine whether the insurer intentionally relinquished its appraisal rights or engaged in intentional conduct inconsistent in claiming these rights." (citing *In re* Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404, 407 (Tex. 2011) (orig. proceeding); *In re* Liberty Ins. Corp., 496 S.W.3d 229, 235 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding))).

benefits that would be payable under its policy as if the risk had been covered.'"[21]  Moreover, an

insurance carrier can be estopped to assert, invoke, or rely upon any condition of the policy, and

in the alternative compliance with any such can condition may also be excused.[22]

8.      Here, the carrier's own evidence shows it violated the Texas Insurance Code in a

number of respects; these prejudiced the insured, and the carrier is estopped from invoking the

appraisal condition of the policy. The carrier's own evidence shows that Plaintiff claimed a

covered loss in excess of the policy deductible in December 2017, and the carrier made the

unilateral determination that the Plaintiff's claim and estimate "did not reach the $4,397,000

deductible on the UNC policy…"[23]   Importantly, the *Defendant never informed Plaintiff of this*

*decision made almost a year before attempting to invoke the appraisal process*.   This was a

violation of the Texas Insurance Code and a statutorily defined unfair settlement practice

defendant neither paid the claim within sixty days nor requested within the same time frame   any

additional documents or statements with which to decide the claim. It thereby violated Tex. Ins.

Code Section 542.056 by not notifying Plaintiff of the rejection of the claim and estimate within

15 days and providing Plaintiff the reasons for the rejection. Defendant violated Ins. Code Section

542.058 by not paying the claim within sixty days of receiving all reasonably requested items,

---

21.  Menchaca, 545 S.W.3d at 498.

22.  *Cox Operating Co. v. Surplus Lines Ins. Co.*, No. 13-20529 (5th Cir. July 30, 2015); *Williams v. Travelers Insurance Company*, 220 F.Sup. 411 (WD Tx. 1963).  *Employers Casualty Company v. Scott Electric Company*, 513 S.W.2d 642 (Tex.App.—Corpus Christi, 1974); *Viles v. Security National Insurance Company*, 788 S.W.2d 566 (Tex. 1990); *Angelo State University v. International Insurance Company of New York*, 491 S.W.2d 700 (Tex. App.—Austin 1973, no writ); See *American Casualty & Life Insurance Company v. McCuistion*, 202 S.W.2d 474 (Tex. App.—Ft. Worth, 1947, ref. n.r.e.), *Hazlitt v. Provident Life & Accident Insurance Company*, 212 S.W.2d 1012 (Tex. App.—San Antonio, 1948, aff'd 216 S.W.2d 805); *Austin Building Company v. National Union & Fire Insurance Company*, 403 S.W.2d 499 (Tex. App.—Dallas, 1966, ref. n.r.e.  Appealed after remand 422 S.W.2d 763, aff'd 432 S.W.2d 697); *Service Mutual Insurance Company of Texas v. Territo*, 147 S.W.2d 846 (Tex. Civ. App.—Waco 1941, no writ); *US Fidelity & Guarantee Company v. Bimco Iron & Metal Corp.*, 464 S.W.2d 353 (Tex. 1971).

23.  Defendant's Motion, paragraph 7.

statements, and forms necessary to decide whether to accept or reject the claim made. Defendant violated Tex. Ins. Code Section 541.060 (3) by failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim. It violated Tex. Ins. Code 541.060 (4) by failing within a reasonable time to affirm or deny coverage of a claim to a policyholder or submit a reservation of rights to a policyholder. *And the Defendant committed all these statutorily defined acts of bad faith approximately one year before ever claiming to want to invoke the appraisal process*. Defendant is charged with the acts of its adjuster, both as a matter of law (*see Protective Life Ins. Co. v. Russell*, 119 S.W.3d 274, 287-88 (Tes. App.—Tyler 2003, no pet.) (Citing Tex. Ins. Code, Art, 21.02 re-codified as Tex. Ins. Code, Section 4001.051), and because Defendant, in response to Plaintiff's pre-suit demand, confessed such liability (*see* Tex. Ins. Code Section 542A notification/response letter attached to Exhibit B Affidavit of William J. Chriss). Moreover, defendant cannot escape the effects of these actions by claiming it didn't deny "the claim" because it paid business income benefits under a separate endorsement to the policy. Plaintiff made a specific claim for insurance proceeds to repair the building in excess of the property damage deductible. Defendant refused to pay that claim in December of 2017 without even telling the Plaintiff about it. The claim was refused again when no offer or payment on it was made within sixty days of the pre-suit notice letter required by Tex. Ins. Code Sections 541.154 and 542A. As a result of these dilatory and illegal tactics, Plaintiff has been significantly prejudiced.

9.       Prior cases have turned on whether the insurer had waived its right to rely on the appraisal process by delaying invoking the clause until long after the insurer had been sued by the policyholder, or otherwise acting in such a way as to waive appraisal.  This sort of waiver has been addressed in two opinions from the Supreme Court of Texas: the 2002 case *In re Allstate County*

8

*Mutual Insurance Co.*[24] and the 2011 case *In re Universal Underwriters of Texas Insurance Co*.[25]

In *In re Universal Underwriters*, an auto dealership, Grubbs Infiniti, sustained covered hail damage to the buildings on its property.[26] After Universal's initial inspection and payment of approximately \$4,000, Grubbs notified Universal that it believed the inspection and payment was not sufficient and requested a re-inspection.[27] Universal sent out an engineer who produced an inspection report identifying an additional amount of covered loss for which Universal paid an additional \$3,000.[28] Four months later, Grubbs filed suit for breach of contract, bad faith, and PPCA.[29] After filing suit, Universal moved to compel Grubbs to participate in appraisal, which the trial court denied based on Grubbs's argument that Universal had waived appraisal as a matter of law by an unexplained delay in requesting it.[30] Rejecting Grubbs's argument, the court set out two rules governing waiver of appraisal by delay:

Any delay is measured from the point at which the parties have an "impasse."[31] An "impasse" was characterized as an "apparent breakdown of good-faith negotiations."[32] Thus, a failure of good faith, e.g., the violation of statutory claims handling deadlines or the commission of statutorily defined unfair settlement practices, is relevant to this inquiry. Negotiation requires, at a minimum, communication, and yet for over six months between determining that it would not

---

24. *In re* Allstate Cty. Mut. Ins. Co., 85 S.W.3d 193 (Tex. 2002) (orig. proceeding).
25.  *In re* Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404 (Tex. 2011) (orig. proceeding).
26. *In re* Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404, 405 (Tex. 2011) (orig. proceeding).
27. *In re* Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404, 406 (Tex. 2011) (orig. proceeding).
28. *In re* Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404, 406 (Tex. 2011) (orig. proceeding).
29. *In re* Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404, 406 (Tex. 2011) (orig. proceeding).
30. *In re* Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404, 406 (Tex. 2011) (orig. proceeding).
31. *See In re* Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404, 408 (Tex. 2011) (orig. proceeding) ("Delay must be measured from the point of impasse.").
32. *In re* Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404, 409 (Tex. 2011) (orig. proceeding).

pay for property damage and receiving pre-suit notice, Defendant illegally made no communication of decisions it had already made and positions it had already taken internally. Defendant's claim that the parties agreement to mediate *this lawsuit* (which is a matter required to be discussed in any Rule 26 conference) somehow disproves the existence of an impasse over a year ago is disingenuous at best. Mediating the lawsuit and all its causes of action is not the same as merely continuing the claim adjustment or claim negotiation process.

10.     Defendant points out that delay alone is not enough—the party avoiding appraisal must also show substantial prejudice.[33]    Even if a party unreasonably delays invoking appraisal after there is an "impasse," waiver will still not occur unless the party seeking to avoid the appraisal process demonstrates that the delay caused some sort of substantial prejudice.[34] Drawing on its legal authorities regarding waiver in other contexts—including waiver of arbitration clauses—the court concluded that implied waiver by delay required both an unexcused delay from the point of impasse and proof that the delay itself resulted in some harm to the policyholder.[35]    In this case, due to Defendant's illegal and unreasonable delay, an appraisal process that could have begun in December (when the property damage claim was refused) and then would have ended before suit was filed in September 2018[36] was instead not even requested until October 2018 and has not yet begun.  That delay has damaged and prejudiced Plaintiff as shown below.

---

33.  *See In re* Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404, 411 (Tex. 2011) (orig. proceeding) (holding a party must show both delay and prejudice to establish waiver).

34.  *See In re* Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404, 412 (Tex. 2011) (orig. proceeding) ("In order to establish waiver, therefore, a party must show that an impasse was reached, and that any failure to demand appraisal within a reasonable time prejudiced the opposing party").

35.  *In re Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404 (Tex. 2011) (orig. proceeding).*

36.  See attached Exhibit A affidavit of Mike Krismer opining that an appraisal would almost certainly not take over 8 months

11.    Aside from delay, waiver is also found from a party's use of the courts.[37] Generally, to amount to implied waiver of alternative dispute resolution through participation in the ongoing litigation, the party must have taken such acts as to have "substantially invoked the litigation process."[38] In the specific context of appraisal, acts constituting implied waiver by this sort of conduct are acts "reasonably calculated to induce the [insured] to believe that a compliance by him with the terms and requirements of the policy is not desired[] or would be of no effect if performed. . . . [and] relied on must amount to a denial of liability[] or a refusal to pay the loss."[39] In a recent opinion from the Fort Worth Court of Appeals, the court agreed there was implied waiver by conduct where the insurer made six inspections of the home after being sued, unsuccessfully attempted to remove the case to federal court (it was remanded), agreed to a trial setting, moved for and obtained an order for a seventh inspection of the home, moved for and received extensions of time to designate its experts, and was allowed to designate a new expert.[40] After all of this, Allstate, the insurer, made an offer to settle the lawsuit, which the homeowner rejected.[41] Here again, it is clear that a policyholder's receipt of offers to settle after notice and filing of suit *does not* impact the waiver and estoppel analysis. It is too late at that point to do so. Indeed The court characterized Allstate's settlement offer as a mere masquerade attempting to establish a new "point of impasse concerning the amount of loss…"[42] Reviewing all of Allstate's

---

37.  *See* Perry Homes v. Cull, 258 S.W.3d 580, 589–90 (Tex. 2008) (recalling occasions where parties waive an arbitration clause by substantially invoking the judicial process).

38.  Perry Homes v. Cull, 258 S.W.3d 580, 593 (Tex. 2008) (applying to arbitration).

39.  *In re* Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404, 407 (Tex. 2011) (orig. proceeding) (quoting Scottish Union & Nat'l Ins. Co. v. Clancy, 8 S.W. 630, 632 (Tex. 1888)).

40.  *In re* Allstate Vehicle & Prop. Ins. Co., 549 S.W.3d 881, 883–84 (Tex. App.—Fort Worth 2018, orig. proceeding).

41.  *In re* Allstate Vehicle & Prop. Ins. Co., 549 S.W.3d 881, 885 (Tex. App.—Fort Worth 2018, orig. proceeding).

42.  *In re* Allstate Vehicle & Prop. Ins. Co., 549 S.W.3d 881, 891 (Tex. App.—Fort Worth 2018, orig. proceeding).

conduct in the case, the court concluded: "Based on the facts and circumstances outlined above, we hold that it was within the trial court's discretion to determine that Allstate's conduct clearly constituted intentional conduct inconsistent with its right to invoke the contractual right of an appraisal to determine the amount of loss."[43]

12.     On the question of prejudice, the court looked to the whole record and found more than mere delay, concluding, "[p]rejudice to a party may arise in any number of ways that demonstrate harm to a party's legal rights or financial position," and that in addition to proving prejudice in the form of incurring expense, "prejudice may arise not only from the delay but also from the requesting party's intentional conduct in the meantime—like conduct triggering additional expenses, conduct constituting inherent unfairness, conduct constituting purposeful manipulation of the appraisal process, and conduct giving the party requesting appraisal an unfair tactical advantage."[44] The court detailed some of these facts constituting prejudice, including:

"the roof damage to her home was over two and a half years old when Allstate demanded an appraisal, and storms during those two and a half years had added to her roof damage, making it impossible for an appraiser to now determine what damage was caused by which storm;"[45] and

"an appraisal [would] take weeks or months to accomplish, further delaying resolution of this matter, which Jackson's counsel represented could be tried in one or two days..."[46]

13.     Cases where a waiver of appraisal by an insurer have been found often involve situations where the policyholder has demanded money has refused and also not promptly

---

43.  *In re* Allstate Vehicle & Prop. Ins. Co., 549 S.W.3d 881, 890 (Tex. App.—Fort Worth 2018, orig. proceeding).

44.  *In re* Allstate Vehicle & Prop. Ins. Co., 549 S.W.3d 881, 892 (Tex. App.—Fort Worth 2018, orig. proceeding) (quoting Perry Homes v. Cull, 258 S.W.3d 580, 597 (Tex. 2008)).

45.  *In re* Allstate Vehicle & Prop. Ins. Co., 549 S.W.3d 881, 893 (Tex. App.—Fort Worth 2018, orig. proceeding).

46.  *In re* Allstate Vehicle & Prop. Ins. Co., 549 S.W.3d 881, 893 (Tex. App.—Fort Worth 2018, orig. proceeding).

demanded appraisal. For instance, in *Manchester Fire Insurance Co. v. Simmons*,[47] the court rejected an insurer's argument claiming a district court judgment in favor of the insured should have been overturned because the insured refused to submit the claim to appraisal under the policy.[48]   The insurer ignored letters from the insured trying to resolve the dispute about the amount of the loss without suit.[49]   The court concluded:

> The company, through its agents, met the approaches of the assured for settlement with indifference, and exhibited a disinclination to go into any kind of investigation and determination of the amount of the loss. . . . [The company] has refrained from such investigation as might have led to an agreement, and by this course has also prevented the occurrence of the contingency in which appraisers are provided for by the contract. It certainly should not be permitted to sit back and take no action until suit is brought to enforce its liability, and then successfully urge as a defense that the amount of the loss has not been agreed upon or fixed by appraisers.[50]

It has long been the law in Texas that denying a claim accomplishes a waiver or estoppel of conditions of the policy that then become moot, since the claim has been denied.[51]   For instance, this has been held to prevent attempts to avoid payment of denied claims by later claiming a proof

---

47.   Manchester Fire Ins. Co. v. Simmons, 35 S.W. 722 (Tex. App.—Dallas 1896, writ ref'd).

48.   *See* Manchester Fire Ins. Co. v. Simmons, 35 S.W. 722, 724 (Tex. App.—Dallas 1896, writ ref'd) (holding the insurer's position is not sound because the insurer did not submit the claim pursuant to the appraisal policy).

49.   Manchester Fire Ins. Co. v. Simmons, 35 S.W. 722, 723 (Tex. App.—Dallas 1896, writ ref'd).

50.   Manchester Fire Ins. Co. v. Simmons, 35 S.W. 722, 723 (Tex. App.—Dallas 1896, writ ref'd).

51.   *See* Ford v. State Farm Mut. Auto. Ins. Co., 550 S.W.2d 663, 666 (Tex. 1977) (finding insurer's unconditional denial of insurer's claim waived policy conditions).

of loss has not yet been given.[52] There is no reason to insist on performance of conditions like this after the insurer has already refused to pay the claim on some other basis.[53]

14. When the insured files suit after the insurer denies coverage, may the insurer still invoke the appraisal clause to determine the amount of the loss *if* it were covered? Texas courts have generally concluded that the mere denial of a claim does not necessarily constitute a waiver of the right to refer the disagreement to appraisal, but the circumstances of the claim and the nature of the denial must be considered to determine whether the insurer has waived the right to appraisal.[54] "Whether an insurer denied a homeowner's claim for damages under the governing policy is relevant to the question of waiver of the appraisal clause, but it is not determinative of that question."[55] In *In re Acadia Insurance Co.*,[56] the Amarillo Court of Appeals concluded there was no abuse of discretion in denying a motion to compel appraisal where the insurer agreed there was tangible damage to the property but denied that all the damage was covered by the policy.[57]

---

52. *See* Viles v. Security Nat'l Ins. Co., 788 S.W.2d 566, 567–68 (Tex. 1990) (finding insurer's denial of insured's claim before proof of loss was due waived the policy's proof of loss provision).

53. *See* Viles v. Security Nat'l Ins. Co., 788 S.W.2d 566, 568 (Tex. 1990) ("[A]n insurer's denial of a claim before the deadline for presenting the required proof of loss waives that requirement as a matter of law."); Angelo State Univ. v. Int'l Ins. Co. of N.Y., 491 S.W.2d 700, 701 (Tex. App.—Austin 1973, no writ) (stating that the policyholder has a "contractual obligation to furnish [the insurer] with a sworn statement of loss," but also acknowledging "the well-established rule of law that insurer will be deemed to have waived this requirement where insurer denies liability within the time allotted by the terms of the policy for proof of loss to be furnished."); *see also* Hazlitt v. Provident Life & Accident Ins. Co., 212 S.W.2d 1012, 1013 (Tex. App.—San Antonio, 1948), *aff'd*, 216 S.W.2d 805 (Tex. 1949) (stating an allegation of an insurer refusing to permit a policyholder from submitting proof of loss); Am. Cas. & Life Ins. Co. v. McCuistion, 202 S.W.2d 474, 478 (Tex. App.—Fort Worth 1947, writ ref'd n.r.e.) (holding that "the rule is unquestioned in this state that where the insurance company denies liability under the terms of the policy, that a compliance with the policy to furnish proofs of loss is waived and a recovery may be had thereon without furnishing such proofs" (quoting Federal Surety Co. v. Smith, 41 S.W.2d 210, 213 (Tex. Comm'n App. 1931))).

54. *See In re* Allstate Vehicle & Prop. Ins. Co., 542 S.W.3d 815, 820 (Tex. App.—Beaumont 2018, orig. proceeding) (per curiam) (explaining the need to examine the circumstances of a claim and the nature of a denial of benefits when determining whether an insurer has waived appraisal); *see also* Pounds v. Liberty Lloyds of Tex. Ins. Co., 528 S.W.3d 222, 226 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("Waiver of a contractual right may be express or implied from conduct.").

55. *In re* Liberty Ins. Corp., 496 S.W.3d 229, 235 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding) (citing State Farm Lloyds v. Johnson, 290 S.W.3d 886, 894 (Tex. 2009); *see also* State Farm Lloyds v. Johnson, 290 S.W.3d 886, 894 (Tex. 2009) ("When an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong.").

56. *In re* Acadia Ins. Co., 279 S.W.3d 777 (Tex. App.—Amarillo 2007, orig. proceeding).

57. *In re* Acadia Ins. Co., 279 S.W.3d 777, 780 (Tex. App.—Amarillo 2007, orig. proceeding).

15.     If the insurer denies the claim based on an exclusion but decides only after a lawsuit is filed that it would now also like to contest the amount of the loss, the Texas Supreme Court has strongly suggested that such conduct is suspect and may estop the carrier from invoking appraisal. The purpose of appraisal is to permit either party to save the cost and time of litigating a disagreement about the amount of the loss.[58] As the *Johnson* court explained:

> [A]ppraisal is intended to take place before suit is filed; this Court and others have held it is a condition precedent to suit. Appraisals require no attorneys, no lawsuits, no pleadings, no subpoenas, and no hearings. It would be a rare case in which appraisal could not be completed with less time and expense than it would take to file motions contesting it.[59]

Revealing there is a dispute about the amount of loss only after the parties have gone to court defeats the entire purpose of appraisal.[60]

### Scope: Which Parts of a Dispute Are Subject to Appraisal?

16.     Is causation a "liability" issue for the courts or an issue inextricably intertwined with determining the "amount of loss" and subject to appraisal?  Is it sometimes one and sometimes the other?  Justice Brister attempted to answer this question in his opinion in *State Farm Lloyds v. Johnson*, but failed, as different parts of his opinion are still regularly cited by *both* sides in support of "scope" arguments when insurers are moving to compel appraisal.[61]  In *State Farm Lloyds v. Johnson*, Johnson made a claim on her policy after suffering hail damage to her

---

58.  Mark A. Ticer et al., *Appraisal in the New World Order*, 12 J. TEX. INS. L. 1, 7 (2013) ("[T]he purposes of appraisal . . . is a prompt, efficient, and inexpensive method to determine the amount of loss.").
59.  State Farm Lloyds v. Johnson, 290 S.W.3d 886, 894 (Tex. 2009).
60*.  See* State Farm Lloyds v. Johnson, 290 S.W.3d 886, 894 (Tex. 2009) (asserting the goal of appraisal is to determine the amount of loss before suit is filed); *see also* Scottish Union & Nat'l Ins. Co. v. Clancy, 8 S.W. 630, 631–32 (Tex. 1888) (holding appraisal was condition precedent to litigation).
61.  *See generally* State Farm Lloyds v. Johnson, 290 S.W.3d 886 (Tex. 2009) (affirming the court of appeal's order granting summary judgment compelling State Farm to participate in the appraisal process).

roof.[62]   State Farm's adjuster found the loss was less than Johnson's $1,477 deductible.[63]

However, a roofer hired by Johnson concluded the damage would cost more than $13,000 to

repair.[64]   Johnson requested appraisal under the policy, but State Farm refused to participate,

arguing the dispute concerned "causation" rather than the amount of loss.[65]   Johnson sued solely

to obtain an order compelling State Farm to participate in appraisal.[66]   The trial court refused

appraisal, but the court of appeals reversed.[67]   The Texas Supreme Court took the case to attempt

to resolve where "causation" disputes fit into coverage litigation and the scope of appraisal.[68]

The court first noted the key distinction between arbitration and appraisal.[69]   Arbitration concerns

the parties' liability and stands in place of the courts' jurisdiction, while appraisal only resolves

the amount of the loss, leaving the question of liability for that loss entirely to the courts.[70]   The

dispute turned on the number of shingles that were damaged by the covered hail storm and needed

to be replaced.[71]   State Farm's argument that this was a matter of "causation" not subject to

appraisal was rejected by the court: "A dispute about how many shingles were damaged and

needed replacing is surely a question for the appraisers. . . .   What's more, either party could avoid

appraisal by simply picking a few extras."[72]

---

62.  State Farm Lloyds v. Johnson, 290 S.W.3d 886, 887 (Tex. 2009).
63.  State Farm Lloyds v. Johnson, 290 S.W.3d 886, 887 (Tex. 2009).
64.  State Farm Lloyds v. Johnson, 290 S.W.3d 886, 887 (Tex. 2009).
65.  State Farm Lloyds v. Johnson, 290 S.W.3d 886, 887–88 (Tex. 2009).
66.  State Farm Lloyds v. Johnson, 290 S.W.3d 886, 888 (Tex. 2009).
67.  State Farm Lloyds v. Johnson, 290 S.W.3d 886, 888 (Tex. 2009).
68.  *See* State Farm Lloyds v. Johnson, 290 S.W.3d 886, 888 (Tex. 2009) ("We grant State Farm's petition to decide whether the dispute here fell within the scope of this appraisal clause.").
69.  *See* State Farm Lloyds v. Johnson, 290 S.W.3d 886, 889–90 (Tex. 2009) (noting previous distinctions between arbitration and appraisal).
70.  *See* State Farm Lloyds v. Johnson, 290 S.W.3d 886, 890 (Tex. 2009) ("[T]he scope of appraisal is damages, not liability.").
71.  State Farm Lloyds v. Johnson, 290 S.W.3d 886, 891 (Tex. 2009).
72.  State Farm Lloyds v. Johnson, 290 S.W.3d 886, 891 (Tex. 2009).

17.    State Farm tried to argue the real dispute was not which shingles were damaged, "but which [shingles] were damaged *by hail*."[73]   The court initially seemed to presume this would have been a valid argument, but rejected it on the basis of the specific record in that case, concluding: "But nothing in the summary judgment record establishes Johnson's roof was damaged by anything else. In State Farm's denial letter, its summary judgment motion, and even its briefs in this Court, there is neither evidence nor even a hint about what else caused the damage."[74]   Thus, the record did not establish that there was any dispute about causation.[75]   That should have resolved the case. However, the court went on to discuss how it would handle the issue even if it were a matter of "causation."[76]   Foreshadowing the rest of the opinion, the court begins by noting: "In the abstract, it is hard to say whether causation is more a question of liability or damages."[77]   The court then proceeded to set forth a number of rules that are easy to state in the abstract but often more difficult to apply to any particular dispute: "[W]hen different causes are alleged for a single injury to property, causation is a liability question for the courts."[78]   The example given is where appraisers disagreed about the cause of a foundation movement, which the court agreed would be a liability question, not an appraisal question.[79]   Similarly, "[W]hen an indivisible injury to property may have several causes, appraisers can assess the amount of damage and leave causation up to the courts"[80]; and "When divisible losses are involved, appraisers can

73.   State Farm Lloyds v. Johnson, 290 S.W.3d 886, 891 (Tex. 2009).
74.   State Farm Lloyds v. Johnson, 290 S.W.3d 886, 891 (Tex. 2009).
75.   *See* State Farm Lloyds v. Johnson, 290 S.W.3d 886, 891 (Tex. 2009) ("[T]he trial court could not conclude as a matter of law that the parties' dispute was about causation rather than something else.").
76.   State Farm Lloyds v. Johnson, 290 S.W.3d 886, 891–93 (Tex. 2009).
77.   State Farm Lloyds v. Johnson, 290 S.W.3d 886, 892 (Tex. 2009).
78.   State Farm Lloyds v. Johnson, 290 S.W.3d 886, 892 (Tex. 2009).
79.   *See* State Farm Lloyds v. Johnson, 290 S.W.3d 886, 892 (Tex. 2009) (explaining the role of appraisers is to determine the cost of damage while leaving the issue of deciding liability to the courts (citing Wells v. Am. States Preferred Ins. Co., 919 S.W.2d 679, 685–86 (Tex. App.—Dallas 1996, writ denied))).
80.   State Farm Lloyds v. Johnson, 290 S.W.3d 886, 894 (Tex. 2009).

decide the cost to repair each without deciding who must pay for it."[81]  In this case, the expert report disclosed by Defendant lists a number of forms of damage alleged not to have been covered. (See Moody report attached to Exhibit B Chriss Affidavit).

18.     Some of these rules seem to facially contradict one another.  For example, the insurer's appraiser decides that he is going to assess the value of damaged roof at $0 because he believes the roof was damaged by a prior storm and not the recent hail storm that occurred during the policy period.  The insured's appraiser decides the damage resulted from the recent storm and will cost $1 million to repair.  This is an "indivisible injury to property that may have several causes" which would leave the real question one of causation and not amount, *but* it is also a situation in which the "causation question involves separating loss due to a covered event from a property's pre-existing condition," which the Court considers a question for appraisal and not a liability issue for the courts.[82]

19.     Older cases seemed to be clearer on this distinction.  In *Wells v. American States Preferred Insurance Co.*,[83] which is cited in *Johnson*, the appraisal award specified the damages "related to the plumbing leak" were $0.[84]  In the context of the award and the parties' dispute about the loss, the court interpreted this $0 valuation as turning on whether the plumbing leak was the cause of the loss even though it was expressed in terms of dollar value, and therefore a matter that was beyond the scope of the appraisal clause.[85]

20.     In an opinion released in May 2018, another court addressed this issue in the context of a "named perils" policy that provided coverage only if the loss was caused by windstorm

---

81.   State Farm Lloyds v. Johnson, 290 S.W.3d 886, 894 (Tex. 2009).
82.   State Farm Lloyds v. Johnson, 290 S.W.3d 886, 892, 894 (Tex. 2009).
83.   Wells v. Am. States Preferred Ins. Co., 919 S.W.2d 679 (Tex. App.—Dallas 1996, writ denied).
84.   Wells v. Am. States Preferred Ins. Co., 919 S.W.2d 679, 682 (Tex. App.—Dallas 1996, writ denied).
85.   Wells v. Am. States Preferred Ins. Co., 919 S.W.2d 679, 683 (Tex. App.—Dallas 1996, writ denied).

or hail.[86]   The umpire and Dickinson Independent School District's appraiser agreed to an

appraisal award of nearly $10,000,000 for Hurricane Ike-related damage to school properties.[87]

The school district was granted summary judgment on "causation" and the amount of damages,

and judgment was ultimately entered against the insurer, Texas Windstorm Insurance Association

(TWIA), for breach of contract because it had not paid the appraisal award.[88]   TWIA argued the

appraisal award by itself was insufficient evidence to support the judgment, because it only

contained the valuation of the damages and no causation analysis or other explanation identifying

any of that damage as having been caused by the two named perils— windstorms or hail.[89]   TWIA

also produced evidence that wind and hail were not the only causes of damage they found to the

school properties.[90]   The "critical issue" therefore was whether the appraisal award alone could

establish the amount of the *covered* loss suffered by the school district.[91]   The court concluded

that it could not establish liability as a matter of law in the face of evidence raising a genuine issue

---

86.   *See* Tex. Windstorm Ins. Ass'n v. Dickinson Indep. School Dist., No. 14-16-00474-CV, 2018 WL 2436924, at *10 (Tex. App.—Houston [14th Dist.] May 31, 2018, no pet.) (emphasizing "[the policy at issue] explicitly excluded loss or damage caused by or resulting from 'rain, whether driven by wind or not unless wind or hail first makes an opening in the walls or roof of the described building'").

87.   Tex. Windstorm Ins. Ass'n v. Dickinson Indep. School Dist., No. 14-16-00474-CV, 2018 WL 2436924, at *3 (Tex. App.—Houston [14th Dist.] May 31, 2018, no pet.).

88.   Tex. Windstorm Ins. Ass'n v. Dickinson Indep. School Dist., No. 14-16-00474-CV, 2018 WL 2436924, at *4 (Tex. App.—Houston [14th Dist.] May 31, 2018, no pet.).

89.   *See* Tex. Windstorm Ins. Ass'n v. Dickinson Indep. School Dist., No. 14-16-00474-CV, 2018 WL 2436924, at *8 (Tex. App.—Houston [14th Dist.] May 31, 2018, no pet.) (asserting that appraisal awards establish damages but not liability).

90.   Tex. Windstorm Ins. Ass'n v. Dickinson Indep. School Dist., No. 14-16-00474-CV, 2018 WL 2436924, at *8 (Tex. App.—Houston [14th Dist.] May 31, 2018, no pet.).

91.   Tex. Windstorm Ins. Ass'n v. Dickinson Indep. School Dist., No. 14-16-00474-CV, 2018 WL 2436924, at *9 (Tex. App.—Houston [14th Dist.] May 31, 2018, no pet.).

of material fact as to how much of the damage found by the appraisers was caused by the named

perils covered under the policy.[92] The case was reversed and remanded.[93]

21.     Ultimately, the question of "whether the appraisers have gone beyond the damage

questions entrusted to them will depend on the nature of the damage, the possible causes, the

parties' dispute, and the structure of the appraisal award."[94] This issue will likely continue to be

regularly litigated both in the context of compelling cases to appraisal or avoiding appraisal *and*

enforcing or setting aside appraisal awards where one side or the other claims the appraisers

exceeded the scope of the appraisal clause, as occurred in *Garcia v. State Farm Lloyds*, a 2016

San Antonio Court of Appeals case.[95] Thus, there is no reason to believe that, even if there is an

appraisal, it will resolve even the breach of contract portion of this litigation.

In a seminar presentation sponsored by the Insurance Section of the State Bar of Texas

shortly after the *Johnson* opinion was published and its author's departure from the bench, Justice

Brister, the author of *Johnson*, explained his belief that the *Johnson* opinion would be relatively

uncontroversial because appraisals would operate much like mediations, resolving only those

simple cases not hotly contested, while parties to more serious disputes would still get to litigate

liability for the loss, as well as to attack the validity or relevance of the result of the appraisal in a

jury Trial.[96] Of course, the court had not been tasked with reviewing the *Breshears* rule or the

---

92.   *See* Tex. Windstorm Ins. Ass'n v. Dickinson Indep. School Dist., No. 14-16-00474-CV, 2018 WL 2436924, at *11 (Tex. App.—Houston [14th Dist.] May 31, 2018, no pet.) ("Under the specific facts of this case, causation is a liability question for the court.").

93.   Tex. Windstorm Ins. Ass'n v. Dickinson Indep. School Dist., No. 14-16-00474-CV, 2018 WL 2436924, at *13 (Tex. App.—Houston [14th Dist.] May 31, 2018, no pet.).

94.   State Farm Lloyds v. Johnson, 290 S.W.3d 886, 893 (Tex. 2009).

95.   Garcia v. State Farm Lloyds, 514 S.W.3d 257, 267 (Tex. App.—San Antonio 2016, pet. denied).

96.   *See* Scott A. Brister & Mark A. Ticer, Conference Panel on Appraisal: State Farm Lloyds v. Johnson, What Happened?, held by the Insurance Law Section of the State Bar of Texas, and The University of Texas School of Law, at 13:45–14:10 (Oct. 15, 2010), https://utcle.org/conferences/IN10 [https://perma.cc/AS9X-CEEU] (". . . you come up with an answer and in half or three quarters of the cases, that answer will be what the parties settle on, but then some of them, somebody's not going to like it, so you just disregard it and move on.")

"independent injury" rule at that point.[97] However, the 2018 opinion of the Texas Supreme Court in *Menchaca* changed all of that.

### Effect on Breach of Contract, Bad Faith, and Violations of the Texas Insurance Code

22. In *Breshears v. State Farm Lloyds*,[98] homeowners gave notice of a loss for plumbing leaks under their policy with State Farm.[99] State Farm valued the loss at $18,742, and the homeowners disagreed that the amount was enough for the repairs.[100] Suit was filed but abated while the disagreement went through appraisal where the appraisers and umpire agreed the amount of the loss was actually $21,484.[101] State Farm paid the difference within thirty days of the appraisal award.[102] Both sides moved for summary judgment, with State Farm taking the position that the amount of the loss was determined by the appraisal and therefore there was no breach of the contract and by extension no possible breach of the Insurance Code.[103] The Breshears argued the appraisal award established as a matter of law that State Farm had breached

---

97. *See* Breshears v. State Farm Lloyds, 155 S.W.3d 340, 344 (Tex. App.—Corpus Christi 2004, pet. denied) (mem. op) (finding the insurers were entitled to summary judgement against the insureds' claim of breach of contract because the insurers established proof of their participation and full compliance with the appraisal process); Republic Ins. Co. v. Stoker, 903 S.W.2d 338, 341 (Tex. 1995) (acknowledging "a general rule [that] there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered[,]" but nevertheless recognizing "the possibility that in denying the claim, the insurer may commit some act, so extreme, that would cause injury independent of the policy claim.").

98. Breshears v. State Farm Lloyds, 155 S.W.3d 340 (Tex. App.—Corpus Christi 2004, pet. denied) (mem. op).

99. Breshears v. State Farm Lloyds, 155 S.W.3d 340, 342 (Tex. App.—Corpus Christi 2004, pet. denied) (mem. op).

100. Breshears v. State Farm Lloyds, 155 S.W.3d 340, 342 (Tex. App.—Corpus Christi 2004, pet. denied) (mem. op).

101. Breshears v. State Farm Lloyds, 155 S.W.3d 340, 342 (Tex. App.—Corpus Christi 2004, pet. denied) (mem. op).

102. Breshears v. State Farm Lloyds, 155 S.W.3d 340, 342 (Tex. App.—Corpus Christi 2004, pet. denied) (mem. op).

103. Breshears v. State Farm Lloyds, 155 S.W.3d 340, 342 (Tex. App.—Corpus Christi 2004, pet. denied) (mem. op).

the contract when it undervalued the claim when the claim was handled.[104] The trial court granted State Farm's motion and the court of appeals affirmed.[105]

23.    In support of their position that payment of an appraisal award did not foreclose a claim for breach of contract, the Breshears relied on the following language from *In re Allstate County Mutual Insurance*,[106] wherein the court was justifying mandamus relief from the denial of appraisal:

. . . if the appraisal determines that the vehicle's full value is what the insurance company offered, there would be no breach of contract.  Accordingly, at a minimum, denying the appraisals will vitiate the defendants' ability to defend the breach of contract claim. Because the appraisals go to the heart of the plaintiffs' breach of contract claim, we need not decide here the significance of the appraisals to each of the remaining claims.[107]

The *Breshears* court characterized this as dicta from the *Allstate* court and concluded that since the Breshears' policy with State Farm specified the "appraisal process was the remedy for any disagreement regarding the amount of loss" that there simply could be no breach of contract where the insurer timely paid the appraisal award.[108]

24.    The *Breshears* court also affirmed summary judgment denying the homeowners' bad faith claims under then Article 21.21 of the Texas Insurance Code (now codified in Chapter

---

104.   Breshears v. State Farm Lloyds, 155 S.W.3d 340, 342 (Tex. App.—Corpus Christi 2004, no pet.) (mem. op.).

105.   Breshears v. State Farm Lloyds, 155 S.W.3d 340, 341 (Tex. App.—Corpus Christi 2004, pet. denied) (mem. op).

106*.  In re* Allstate Cty. Mut. Ins. Co., 85 S.W.3d 193 (Tex. 2002).

107*.  In re* Allstate Cty. Mut. Ins. Co., 85 S.W.3d 193, 196 (Tex. 2002) (orig. proceeding).

108.   Breshears v. State Farm Lloyds, 155 S.W.3d 340, 344 (Tex. App.—Corpus Christi 2004, no pet.) (mem. op.).

541 of the Insurance Code).[109]   In so doing, the court found there was evidence that the amount originally paid by the insurer was reasonable and based on average repair costs from local contractors' estimates obtained at the time of the payment.[110]   The Breshears presented no evidence that State Farm's method of using average costs was unreasonable, "or that the average cost State Farm calculated in their case was itself unreasonable."[111]   Thus, the court concluded there was no evidence to support a statutory bad faith claim.[112]

   25.   The *Breshears* court also affirmed summary judgment in favor of State Farm on the homeowners' claim for violations of the Prompt Payment of Claims Act, then Article 21.55 of the Texas Insurance Code (and now codified as subchapter B to Chapter 542).[113]   Without specifically addressing the statutory language, the court concluded:

> The Breshears argue that because of the appraisal process, they were not actually paid until after State Farm paid them the difference between the first payment and the appraisal award, which occurred long after the sixty-day statutory limit. . . .  We disagree. . . .  The fact that the appraisal process was later invoked does not alter the fact that State Farm complied with the insurance code and provided a reasonable payment within a reasonable time.[114]

---

109.   *See* Breshears v. State Farm Lloyds, 155 S.W.3d 340, 346 (Tex. App.—Corpus Christi 2004, pet. denied) (mem. op.) ("Therefore, denial of the Breshears' motion for summary judgment was proper as they have failed to establish an article 21.21 violation against State Farm.").

110.   Breshears v. State Farm Lloyds, 155 S.W.3d 340, 345–46 (Tex. App.—Corpus Christi 2004, pet. denied) (mem. op.).

111.   Breshears v. State Farm Lloyds, 155 S.W.3d 340, 346 (Tex. App.—Corpus Christi 2004, pet. denied) (mem. op.).

112.   Breshears v. State Farm Lloyds, 155 S.W.3d 340, 346 (Tex. App.—Corpus Christi 2004, pet. denied) (mem. op.).

113.   Breshears v. State Farm Lloyds, 155 S.W.3d 340, 345 (Tex. App.—Corpus Christi 2004, pet. denied) (mem. op.).

114.   Breshears v. State Farm Lloyds, 155 S.W.3d 340, 345 (Tex. App.—Corpus Christi 2004, no pet.) (mem. op.); *see also* Nat'l Sec. Fire & Cas. Co. v. Hurst, 523 S.W.3d 840, 847 (Tex. App.—Houston [14th Dist.] 2017, pet. filed) ("As this court has recognized, full and timely payment of an appraisal award under the policy precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law."); *In re* Slavonic Mut. Fire Ins. Ass'n, 308 S.W.3d 556 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding), *overruled on other grounds, In re* Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404, 405–07 (Tex. 2011) (orig. proceeding)

26.     Two months after the opinion in *Breshears*, another court issued a similar opinion precluding any further recovery following appraisal.  In *Franco v. Slavonic Mutual Fire Insurance Ass'n*, the homeowner received a coverage payment from her insurer in the amount of $3,680 actual cash value for damages from a covered plumbing leak.[115]  The homeowner invoked the appraisal process, which resulted in an appraisal umpire's actual cash value award in the amount of $6,902.[116]  The insurer paid the balance of the award to the homeowner, who proceeded with a breach of contract action.[117]  The court held that since the appraisal award was agreed to be "binding" regarding disagreements about the amount of the loss, the homeowner was "estopped" from claiming there had been any breach of the contract when the insurer timely paid the appraisal award.[118]  As in *Breshears*, the court did not affirm summary judgment on the statutory bad faith claim merely on the basis that the appraisal award was paid, but because there was no evidence of any bad faith at the time of the original, deficient payment.[119]  The homeowner apparently raised no complaint on appeal regarding their PPCA claims.[120]

27.     Since *Breshears* and *Franco*, the timely payment of an appraisal award has sometimes been used by insurance companies to try and preclude *any* liability for breach of

---

("Texas courts considering the issue have concluded that full and timely payment of an appraisal award under the policy precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law.").

115.   Franco v. Slavonic Mut. Fire Ins. Ass'n, 154 S.W.3d 777, 780 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

116.   Franco v. Slavonic Mut. Fire Ins. Ass'n, 154 S.W.3d 777, 880–81 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

117.   Franco v. Slavonic Mut. Fire Ins. Ass'n, 154 S.W.3d 777, 781 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

118.   Franco v. Slavonic Mut. Fire Ins. Ass'n, 154 S.W.3d 777, 787 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

119*.  See* Franco v. Slavonic Mut. Fire Ins. Ass'n, 154 S.W.3d 777, 788 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("[T]here is no evidence raising a fact issue about [insurer's] compliance with the time deadlines imposed by article 21.55.").

120.   Franco v. Slavonic Mut. Fire Ins. Ass'n, 154 S.W.3d 777, 788 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

contract, statutory bad faith or violation of the PPCA as a matter of law, regardless of whether there is evidence of bad faith in the original handling of the claim prior to appraisal.[121]   This is clearly wrong.

28.     Underlying these contentions and opinions like *Breshears* and *Franco* is the idea that the appraisal process is not a dispute resolution procedure, but rather the contractually agreed process for actually determining the value of the claim.  In that sense, one would expect it to be treated the same way that claims are treated for purposes of Uninsured/Underinsured Motorist (UM/UIM) coverage.  If so, one would expect the Supreme Court of Texas to treat appraisal the same way it treats UM/UIM claims.  But it has not done so. Had the Texas Supreme Court believed that a property insurance claim could be adjusted through appraisal instead of the insurer's existing common law and statutory duty to investigate and promptly pay covered losses, the court would have reached a very different result in both *In re Allstate* and *In re Universal Underwriters*.[122]  Indeed, if appraisal were just part of the claims adjusting process as the *Breshears* rule presumes, the Supreme Court of Texas would have dismissed all the breach of contract and bad faith claims in both *In re Allstate* and *In re Universal Underwriters* just like it did in *Brainard v. Trinity Universal Insurance Co.*[123] Instead, the court has explained—twice—that appraisal determines "whether" the contract has been breached, and that the outcome of an appraisal will go to the

---

121. *See generally* Nat'l Sec. Fire & Cas. Co. v. Hurst, 523 S.W.3d 840 (Tex. App.—Houston [14th Dist.] 2017, pet. filed) (finding that an insurer's full and timely payment of appraisal award precludes as a matter of law any award for breach of contract, penalty interest, or any statutory or common-law bad faith violations).

122.  *In re* Allstate Cty. Mut. Ins. Co., 85 S.W.3d 193 (Tex. 2002) (orig. proceeding); *In re* Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404 (Tex. 2011) (orig. proceeding).

123. *See* Brainard v. Trinity Universal Ins. Co., 216 S.W.3d 809, 819 (Tex. 2006) (dismissing the breach of contract and bad faith claims).

"heart" of the plaintiffs' breach of contract claim; both times the court also acknowledged that the "bad faith" claims need not even be abated pending appraisal.[124]

29.    The Texas Supreme Court has not directly addressed the *Breshears* rule, though it has recently requested full briefing on the merits in the petition for review proceeding arising from *Barbara Technologies Corp. v. State Farm Lloyds*,[125] which appears to be limited solely to the issue of whether a PPCA claim survives after the payment of an appraisal award.[126] The Court has also requested merits briefing in *Ortiz v. State Farm Lloyds*, where the issue is limited to the "independent injury" question of whether a statutory bad faith claim can survive the payment of an appraisal award.[127] A petition was also filed in *National Security Fire & Casualty Co. v.*

---

124.   *See In re* Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404, 412 (Tex. 2011) (orig. proceeding) (stating the appraisal clause determines whether the contract has been breached and thus "if the appraisal determined that the full value was what the insurer offered, there would be no breach of contract."); *In re* Allstate Cty. Mut. Ins. Co., 85 S.W.3d 193, 196 (Tex. 2002) (orig. proceeding) ("As to the plaintiff's breach of contract claim, the parties have agreed in the contracts' appraisal clause to the method by which to determine whether a breach has occurred.").

125.   Barbara Techs. Corp. v. State Farm Lloyds, No. 04-16-00420-CV, 2017 WL 1423714, at *1 (Tex. App.—San Antonio Apr. 19, 2017, pet. filed) (mem. op.).

126.   *See* Barbara Techs. Corp. v. State Farm Lloyds, No. 04-16-00420-CV, 2017 WL 1423714, at *2 (Tex. App.—San Antonio Apr. 19, 2017, pet. filed) (mem. op.) (considering the legal question of whether a TPPCA claim can be sustained when the insurer has paid an appraisal award).

127 Ortiz v. State Farm Lloyds, No. 04-17-00252-CV, 2017 Tex. App. LEXIS 10395 (Tex. App. – San Antonio Nov. 8, 2017, pet. filed).  Similar petitions for review in two other State Farm cases were filed challenging Lazos v. State Farm Lloyds, No. 04-17-00286-CV, 2018 Tex. App. LEXIS 669 (Tex. App. – San Antonio Jan. 24, 2018, pet filed) and Alvarez v. State Farm Lloyds, No. 04-17-00251-CV, 2018 Tex. App. LEXIS 268 (App. Jan. 10, 2018, pet. filed).  At the time of this writing the Supreme Court of Texas has requested a response to the petitions in *Lazos* and *Alvarez*, but has not briefing on the merits.

*Hurst*,[128] and the Court has recently requested briefing on the merits in that case as well, which raises all three claims: breach of contract, PPCA and bad faith.[129]

30. However, the Texas Supreme Court *has* recently addressed the language from *Akin* and *Stoker*, often relied on as the basis for the "independent injury" rule, and narrowed the application of the rule in *USAA Texas Lloyds Co. v. Menchaca*.[130]   The issue was not addressed with reference to appraisal, but with regard to the more general question of whether underpaid policy benefits can be "actual damages" for purposes of a statutory bad faith claim even in the absence of some separate independent injury—the court concluded they can.[131]   The *Menchaca* court also described a number of scenarios in which a claim for bad faith insurance handling might go forward even if there were not technically any breach of the contract.[132]

---

128.   Nat'l Sec. Fire & Cas. Co. v. Hurst, 523 S.W.3d 840 (Tex. App.—Houston [14th Dist.] 2017, pet. filed). Plaintiff's best information is that.").  the Supreme Court has requested a response to a petition for review in six appeals and briefing on the merits in three appeals, all of which implicate the same or substantially similar issues raised here. See Barbara Technologies Corp. v. State Farm Lloyds, No. 04-16-00420-CV, 2017 WL 1423714 (Tex. App.—San Antonio Apr. 19, 2017, pet. filed) (requesting response to petition for review and then briefing on the merits); Nat'l Sec. Fire & Cas. Co. v. Hurst, 523 S.W.3d 840 (Tex. App.—Houston [14th Dist.] 2017, pet. filed) (requesting response to petition for review and then briefing on the merits); Ortiz v. State Farm Lloyds, No. 04-17-00252-CV, 2017 WL 5162315 (Tex. App.—San Antonio Nov. 8, 2017, pet. filed) (requesting response to petition for review and then briefing on the merits); Lazos v. State Farm Lloyds, No. 04-17-00286-CV, 2018 WL 521585 (Tex. App.—San Antonio Jan. 24, 2018, pet. filed) (requesting response to petition for review); Alvarez v. State Farm Lloyds, No. 04-17-00251-CV, 2018 WL 340135 (Tex. App.—San Antonio Jan. 10, 2018, pet. filed) (requesting response to petition for review); Zhu v. First Comm'n Ins. Co., 543 S.W.3d 428 (Tex. App.—Houston [14th Dist.] 2018, pet. filed) (requesting response to petition for review).

129. *See generally* Nat'l Sec. Fire & Cas. Co. v. Hurst, 523 S.W.3d 840, 849 (Tex. App.—Houston [14th Dist.] 2017, pet. filed) (holding "that an insured cannot defeat an otherwise valid and binding appraisal award simply by refusing to accept the insurer's payment of the award or by asserting extra-contractual claims that are derivative of the policy claim

130*.   See* USAA Tex. Lloyds Co. v. Menchaca, 545 S.W.3d 479, 489–500, 521 (Tex. 2018) (analyzing *Akin* and *Stoker* and clarifiying "that a plaintiff does not have to prevail on a separate breach-of-contract claim to recover policy benefits for a statutory violation[.]").

131*.   See* USAA Tex. Lloyds Co. v. Menchaca, 545 S.W.3d 479, 494 (Tex. 2018) (permitting the insured to recover actual damages for an insurer's statutory violation if the insured has a right to benefits under the policy).

132*.   See* USAA Tex. Lloyds Co. v. Menchaca, 545 S.W.3d 479, 491 (Tex. 2018) ("[S]ome acts of bad faith, such as *failure to properly investigate a claim* or an unjustifiable delay in processing a claim, do not *necessarily* relate to the insurer's breach of its contractual duties to pay covered claims, and may give rise to different damages." (quoting Twin City Fire Ins. Co. v. Davis, 904 S.W.2d 663, 666 n.3 (Tex. 1995))).

31.     *Menchaca* casts serious doubt on the independent injury rule as it was applied in cases like *Blum's*, *Garcia*, *Ortiz, Lazos,* and *Hurst*, and opens the possibility of a bad faith claim where there is sufficient evidence of bad faith underpayment during the claims handling process even if the insurer eventually paid what it owed after an appraisal award.[133] When the Texas Supreme Court writes directly about this issue, there are several possible outcomes, though only one of these would be consistent with the court's current jurisprudence describing the function and role of appraisal, the court's recent opinions in *Menchaca*, and the language of the Insurance Code.The court could treat the timely payment of appraisal awards as a complete defense as a matter of law to *all* statutory and common law claims against the insurer, even if the evidence demonstrates bad faith at the time the claim was investigated and adjusted.  This is essentially the *Breshears* & "independent injury" rule.[134]  This would preclude any recovery of interest or attorneys' fees, regardless of how or why the insurer underpaid the amount of the loss when the claim was originally investigated and paid.[135]  It also would provide a direct financial incentive for insurers to deliberately underpay claims *and* to shift the cost of investigating the amount of the loss onto the insured, since the insurer will never have to pay more than it should have paid when the claim was originally handled, even if evidence shows the insurer deliberately refused to

---

133.    *Compare* USAA Tex. Lloyds Co. v. Menchaca, 545 S.W.3d 479, 499 (Tex. 2018) ("[I]f an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits."), *with* Blum's Furniture Co. v. Certain Underwriters at Lloyds London, 459 F. App'x 366, 369 (5th Cir. 2012) (per curiam) ("[I]n most circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract." (quoting Liberty Nat'l Fire Ins. Co. v. Akin, 927 S.W.2d 627, 629 (Tex. 1996))), Nat'l Sec. Fire & Cas. Co. v. Hurst, 523 S.W.3d 840, 848 (Tex. App.—Houston [14th Dist.] 2017, pet. filed) ("In order to recover any damages beyond policy benefits, the statutory violation or bad faith must cause an injury that is independent from the loss of benefits."), *and* Garcia v. State Farm Lloyds, 514 S.W.3d 257, 277 (Tex. App.—San Antonio 2016, pet. denied) ("[G]arcia had the burden to raise a genuine issue of material fact that appellees 'commit[ed] some act, so extreme, that would cause injury independent of the policy claim.'". (quoting Republic Ins. Co. v. Stoker, 903 S.W.2d 338, 341 (Tex. 1995))).

134.    *See generally* Blum's Furniture Co. v. Certain Underwriters at Lloyds London, 459 F. App'x 366 (5th Cir. 2012) (per curiam) (applying *Breshears* and *Stoker)*.

135.    *See, e.g.*, Nat'l Sec. Fire & Cas. Co. v. Hurst, 523 S.W.3d 840, 842–43 (Tex. App.—Houston [14th Dist.] 2017, pet. filed) (reversing trial court's judgement awarding, among other things, interest and attorney's fees).

investigate or pay a covered claim in reliance on its appraisal clause.[136] This result would be difficult to reconcile with the court's opinions in *Menchaca* placing limitations on the "independent injury" rule, or with the plain language of the PPCA, which provides no exceptions to its statutory deadlines for appraisal.[137]

32.     The court could treat the timely invocation and payment of appraisal awards as a defense as to a claim for breach of contract but permit a statutory or common law claim to proceed against the insurer where the policyholder can produce sufficient evidence to support a claim for bad faith.  This is how the issue was implicitly addressed in *Breshears* and *Franco*, and would be consistent with how the court wrote about the "independent injury" rule in *Menchaca*, as well as the holdings of thee above cited prior opinions that wrongful conduct in delaying an appraisal can estop the invocation of that policy condition and give rise to a direct action for damages thereby caused.[138]  Want the law has been and should continue to be is that appraisal is only a viable method for addressing size of loss where the claim has not been refused, coverage is not in issue, and it has been timely and properly invoked.

### Abatement

33.     One commonly litigated procedural issue concerns the effect a pending appraisal has on an ongoing lawsuit where the policyholder has already filed suit prior to appraisal.  This

---

136.   *Cf.* USAA TEX. LLOYDS CO. v. Menchaca, 545 S.W.3d 479 (Tex. 2018) ("[A]n insurer's statutory violation permits an insured to receive only those 'actual damages' that are 'caused by' the violation. . . .").

137.   *See generally* TEX. INS. CODE ANN. § 542.053 (listing exceptions to the PPCA); USAA Tex. Lloyds Co. v. Menchaca, 545 S.W.3d 479, 494 (Tex. 2018) (finding that "the insured does not *also* have to prevail on a separate breach-of-contract claim based on the insurer's failure to pay those benefits" if it is found that the insured had a right to benefits under the policy).

138.   *See* USAA Tex. Lloyds Co. v. Menchaca, 545 S.W.3d 479, 499 (Tex. 2018) (recognizing exceptions to the timely payment of appraisal awards defense for insurers); *see also* Breshears v. State Farm Lloyds, 155 S.W.3d 340, 346 (Tex. App.—Corpus Christi 2004, pet. denied) (mem. op) (discussing how the insurer "acted in good faith and conducted a reasonable investigation in response to their claim."); Franco v. Slavonic Mut. Fire Ins. Ass'n, 154 S.W.3d 777, 790 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (implying there was no evidence to show the insurer acted in bad faith).

was a secondary issue addressed by the court in both *In re Allstate*[139] and *In re Universal Underwriters*.[140] In its first opinion on the subject, the court concluded that the denial of an abatement was not subject to mandamus, but that the timing of the case and the appraisal were matters entrusted to the discretion of the trial court.[141] Nevertheless, the court further concluded a case "need not be abated" pending appraisal.[142] In its second opinion, the issue was relegated to a footnote, where the court simply cited *In re Allstate*.[143] Indeed, the Houston Court of Appeals has read *In re Universal Underwriters* as effectively nullifying the abatement holding of *In re Slavonic*.[144] Thus, it would appear that a trial court has broad unreviewable discretion to abate or not abate the lawsuit pending the outcome of an appraisal. This court and division has already determined that abatement is not appropriate in cases such as this one. See *Elller v. United Property and Casualty Insurance Company*, Civil Action No. 2:18-CV-199 (S.D. Tex, August 10, 2018).

## Prejudice Shown

34.     Defendant's delay in invoking appraisal caused Plaintiff prejudicial effects:

---

139.   *See In re* Allstate Cty. Mut. Ins. Co., 85 S.W.3d 193, 195 (Tex. 2002) (orig. proceeding) ("After the plaintiffs filed suit, the insurance companies answered and then filed a plea in abatement and motion to invoke appraisal.").

140.   *See In re* Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404, 406 (Tex. 2011) (orig. proceeding) ("[G]rubs sued Universal . . . . In response, Universal invoked the policy's appraisal clause . . . .").

141.   *See In re* Allstate Cty. Mut. Ins. Co., 85 S.W.3d 193, 196 (Tex. 2002) (orig. proceeding) ("While the trial court's denial of the motion to invoke appraisal was error, the failure to grant the motion to abate is not subject to mandamus.").

142.   *In re* Allstate Cty. Mut. Ins. Co., 85 S.W.3d 193, 196 (Tex. 2002).

143.   *See In re* Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404, 412 n.5 (Tex. 2011) (orig. proceeding) ("The trial court's failure to grant the motion to abate is not subject to mandamus, and the proceedings need not be abated while the appraisal goes forward.").

144.   *See In re* Cypress Tex. Lloyds, No. 14-11-00713-CV, 2011 WL 4366984, at *1 (Tex. App.—Houston [14th Dist.] Sept. 20, 2011, orig. proceeding) (mem. op.) ("[T]he parts of our two prior opinions in which this court granted mandamus relief as to the trial court's failure to abate during the appraisal process are no longer good law."); *see also In re* Cypress Tex. Lloyds, 425 S.W.3d 444, 448 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding) ("We agree with the Fourteenth Court of Appeals' more recent opinion recognizing that, pursuant to controlling authority from our supreme court, the trial court's denial of CTL's motion to abate pending the appraisal is not subject to mandamus.").

A. because appraisal, if invoked, would have been concluded within the statutory 60 day pre-suit window established by Insurance Code Section 542A (by early September after a pre-suit demand letter in early July—see attached Exhibit A Affidavit of William J. Chriss and Exhibit B Affidavit of Mike Krismer), Plaintiff would have only incurred attorney fees of 10% of its claim, instead of the current 40%. This differential and prejudice is independent of any claim for attorney fees in the case because such fees would not be calculated on a percentage basis by law.

B. For the same reason, Plaintiff incurred over 440,000 in expenses, which either relates solely to litigation preparation unnecessary if there were a timely pre-suit appraisal paid by Defendant, or else will be duplicated by appraisal expenses.

35.     Defendant's reliance on the "non-waiver" clause in its policy is inapposite. Whether it has overtly waived any right to invoke appraisal is irrelevant to the question of whether it is estopped to assert it or has impliedly waived it by prejudicial conduct, which are matters of insurance and contract law not addressed in the *GuideOne Mutual Insurance* case cited by Defendant.

36.     The following evidence is attached to this motion:

Exhibit A affidavit of Mike Krismer with invoices attached;

Exhibit B affidavit of William J. Chriss with attorney fee contract, defense expert report, and 542A notice letter response attached.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant's Motion to Compel Appraisal Process and Motion to Abate be Denied and for such further relief to which Plaintiff may show itself justly entitled.

Respectfully submitted,

**THE SNAPKA LAW FIRM**
606 N. Carancahua, Suite 1511
P.O. Box 23017
Corpus Christi, Texas 78403
Telephone: (361) 888-7676
Facsimile: (361) 884-8545

/s/ *William J. Chriss*
**William J. Chriss**
**Attorney-In-Charge**
State Bar No. 04222100
Email:  wjchrisspc@gmail.com
**Kathryn Snapka**
State Bar No. 18781200
Email: ksnapka@snapkalaw.com
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This is to certify that, on January 7, 2019, a true and correct copy of the foregoing was served on all counsel of record in accordance with the Federal Rules of Civil Procedure as follows:

Richard J. Kasson
rkasson@gcaklaw.com
Rebecca H. Aduddell
raduddell@gcaklaw.com
GONZALEZ, CHISCANO, ANGULO & KASSON, P.C.
9601 McAllister Freeway, Suite 401
San Antonio, Texas 78216
**ATTORNEYS FOR DEFENDANT UNITED**
**NATIONAL INSURANCE COMPANY**

/s/ *William J. Chriss*
**William J. Chriss**
**Attorney-In-Charge**